# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **KELLY DIANE WILLARD,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| vs. ) | Case No.  5:12-cv-03536-JHE |
| ) | |
| **CAROLYN W. COLVIN,**[1] ) | |
| **Acting Commissioner of** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant** ) | |

## MEMORANDUM OPINION

Plaintiff Kelly Diane Willard ("Willard") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI").  Willard timely pursued and exhausted her administrative remedies.  The case is therefore ripe for review under 42 U.S.C.

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013.  See http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on December 17, 2013).  Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."  Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above.

§§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is AFFIRMED.[2]

## I. Factual and Procedural History

Willard was a 33-year-old female at the time of her hearing before the Administrative Law Judge ("ALJ") on November 22, 2010. (Tr. 38, 125). Willard has a sixth-grade education. (Tr. 30). Willard has past relevant work as a bartender and a waitress, (Tr. 52), but her earning records demonstrate she has never performed work at the substantial gainful activity level. (Tr. at 135-36).

Willard filed an application for SSI on August 24, 2009. (Tr. 125-31). The State Agency denied Willard's application, and Willard requested a hearing before an ALJ. (Tr. 83-84). After a hearing, the ALJ denied Willard's claim on January 14, 2011. (Tr. 31). Willard sought review by the Appeals Council, but it declined her request on August 10, 2012. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. Willard then initiated this action on October 5, 2012. (Doc. 1).

---

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This court will determine the ALJ's decision is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with

---

[3] In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for SSI, as well as establish entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

---

[4] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised April 1, 2013.

>    (1)   whether the claimant is currently engaged in substantial gainful activity;
>    (2)   whether the claimant has a severe impairment;
>    (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>    (4)   whether the claimant can perform his past work; and
>    (5)   whether the claimant is capable of performing any work in the national economy.

See *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps on and two, [she] will automatically be found disabled if [she] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [her] work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); accord *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## IV. Findings of the Administrative Law Judge

At Step One, the ALJ found Willard has not engaged in substantial gainful activity since the application date. (Tr. 26). At Step Two, the ALJ found Willard had the following severe impairment: mild mental retardation. (*Id.*). At Step Three, the

ALJ found Willard does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27).

Before proceeding to Step Four, the ALJ determined Willard's residual functioning capacity ("RFC"), which is the most a claimant can still do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Willard has the RFC to perform a full range of work at all exertion levels, but with the following non-exertional limitations: she is capable of understanding, remembering, and carrying out short, simple 1-2 step tasks; she is able to perform said work under casual supervision; she functions best within her own work area or station and is able to complete tasks in a timely manner as long as she does not have excessive workloads or rapid work changes; she is able to interact casually with the general public as long as the interaction is non-confrontational; she is likely to miss one or two days [of work] per month. (Tr. 29).

At Step Four, the ALJ determined Willard is unable to perform her past relevant work of bartender and waitress because these jobs required "mental demands" beyond Willard's RFC. (Tr. 30). At Step Five, the ALJ determined, based on Willard's age, education, work experience, and RFC, that jobs exist in significant

numbers in the national economy Willard can perform. (Tr. 30-31). Therefore, the ALJ determined Willard is not disabled and denied her claim. (Tr. 31).

## V. Analysis

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75) ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.*

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(citation omitted). The court must review the Commissioner's decision and determine whether it is supported by substantial evidence and he applied the correct legal standards. *Wilson*, 284 F.3d 1221.

Willard contends the ALJ failed to properly consider the mental retardation listing. (Doc. 8 at 5). Specifically, Willard argues the ALJ improperly evaluated her mental and physical impairments in combination in finding she did not meet or exceed Listing 12.05(C), insisting the ALJ's decision is not supported by substantial evidence and based on a misapplication of Listing 12.05(C). (*Id.*).

### A. The ALJ Properly Evaluated the Severity of Willard's Mental and Physical Impairments in Combination

At Step Two, the ALJ found Willard had the following severe impairment: mild mental retardation. (Tr. 26). At Step Three, the ALJ found this severe impairment, along with Willard's other impairments – depression, anxiety, Gastroespohageal ("GERD"), and "bad feet,"– did not meet or medically equal a listed impairment, specifically listing 12.05 "Intellectual Disability." (Tr. 27). Contrary to her contentions, the ALJ properly evaluated the severity of Willard's alleged impairments in combination.

The structure of the listing for mental retardation is different from the structure of other mental disorder listings. To meet Listing § 12.05, the claimant must satisfy

the requirements of the introductory paragraph contained in Listing § 12.05, which defines "mental retardation" as

> significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Listing 12.05.

The claimant's impairment or impairments must also satisfy one of the four sets of criteria in subparagraph A through D to meet the listing and be presumptively "disabled." Here, the ALJ found Willard's impairments did not meet and were not medically equal to any of the subparagraphs in Listing 12.05 and, therefore, she was not presumptively disabled. (Tr. 27-29).

Willard argues the ALJ erred in her analysis and her conclusion she did not meet the criteria contained in Listing § 12.05(C).[6] Listing 12.05(C) requires "[a]

---

[6] Plaintiff does not challenge the ALJ's finding that Willard did not meet the requirements of § 12.05(A), (B), and (D). (*See* Doc. 8). A review of the record reveals the ALJ's findings in this regard are supported by substantial evidence. Subparagraph A requires "[m]ental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded." Listing 12.05(A). The ALJ properly concluded these requirements are clearly not met in this case. (Tr. 27). The record indicates Willard is able to function independently. (Tr. 27, 266). The ALJ also properly concluded Willard did not satisfy the requirements of subparagraph B, which requires "[a] valid verbal, performance, or full scale IQ of 59 or less." (Tr.

valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05(C).  Here, the ALJ recognized Willard obtained a verbal IQ score of 76, a performance IQ score of 68, and a full scale IQ score of 70 on the Wechsler Adult Intelligence Scale – Third Edition ("WAIS-III") administered by Dr. Jon G. Rogers in October 2009, (Tr. 28, 260-67), but found Willard did not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (Tr. 28).

In support of her argument, Willard cites *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985), in which the Eleventh Circuit reviewed a previous version of this regulation and interpreted the second part of Listing 12.05(C) as requiring something that was "significant" but less than a "severe impairment" as defined by Step 2 of the sequential evaluation process.  Notably, as pointed out in several cases within this Circuit, this regulation was modified in 2000 and the introductory paragraph to Listing 12.00 now equates this criterion with a "severe"

---

28, 264).  Finally, the ALJ properly concluded Willard did not meet the requirements of Listing 12.05(D), which requires "a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." The ALJ found Willard has moderate restrictions in the activities of daily living and moderate difficulties with social functioning and with regard to concentration, persistence, or pace. (Tr. 28). She further found no evidence of episodes of decompensation lasting an extended duration. (*Id.*).

impairment as intended at Step 2 and governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). *See Black v. Astrue*, 678 F. Supp. 2d 1250, 1262-63 (N.D. Fla. 2010); *Carroll v. Astrue*, No. 1:08-cv-74-SRW, 2009 WL 1708073, at *1 (M.D. Ala. June 17, 2009). As it has been superseded by regulation, *Edwards* is no longer good law on this point.

    The current regulation states:

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in the §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1200A. The Federal Register explains the reason for the change as follows:

> We always have intended the phrase to mean that the other impairment is a "severe" impairment, as defined in §§ 404.1520(c) and 416.920(c). We have explained this policy previously in our training manuals, in Social Security Ruling 98-1p, and in Social Security Acquiescence Ruling (AR) 98-2(8). Therefore, [] we revised the fourth paragraph of final 12.00A, which explains how we assess the functional limitations of an additional impairment under listing 12.05C. The revised

> paragraph states that we will assess the degree of functional limitation the additional impairment imposes to determine if it significantly limits an individual's physical or mental ability to do basic work activities; "i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."
>
> Sections §§ 404.1520(c) and 416.920(c) note that we must base our assessment of whether an impairment is severe on the limitations that the impairment imposes on the individual's physical and mental abilities to do basic work activities. When we do this, we do not consider factors such as the individual's age, education, or past work experience. Thus, although the other impairment in listing 12.05C may not prevent the individual from doing his or her past work, it may still cause an "additional and significant work-related limitation of function." Conversely, if the other impairment prevents the individual from doing his or her past work because of the unique features of that work, but does not significantly limit the individual's ability to do basic work activities, we will find that the impairment does not satisfy the "additional and significant work-related limitation of function" requirement in listing 12.05C.

65 Fed. Reg. 50746, 50772-73 (Aug. 21, 2000). Accordingly, the second prong in Listing 12.05(C) now requires evidence of an additional *severe* impairment.

Willard argues her impairments of depressive disorder and anxiety disorder satisfy the second prong of Listing 12.05(C). (*See* Doc. 8 at 5-6). The ALJ found these impairments to be "not severe" and, therefore, concluded Willard did not meet the 12.05(C) Listing. (Tr. 26, 28). Additionally, the ALJ found Willard's GERD and

"bad feet" were not severe because they did not functionally interfere with her ability to do work. (*Id.*). Despite Willard's contentions, these findings are supported by substantial evidence.

A severe impairment significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c) and 416921(a). Basic work activities are the abilities and aptitudes necessary to do most jobs, including (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). An impairment can be considered non-severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

With respect to Willard's allegations of depression and anxiety, the ALJ noted the evidence showed, although Willard had complained of symptoms to a general practitioner, she had not been referred to or received specialized mental health

treatment.[7]  (Tr. 26, 261).  The only treatment Willard received was a prescription for Xanax and refills, which she reported stabilized her symptoms.  (Tr. 26, 252-54, 261, 292, 298).  Additionally, the ALJ noted Willard admitted always having these symptoms even during the period she worked, and the medical evidence does not show Willard's ability to function was any worse during these times.  (Tr. 26, 173, 252-55, 262, 298).

Willard contends the ALJ failed to properly consider the October 27, 2009, consultative examination performed by Dr. Rogers.  (Doc. 8 at 9-10).  To the contrary, the ALJ extensively discussed Dr. Roger's report in her analysis of Listing 12.05, relying on it to conclude Willard had a qualifying IQ score.  (Tr. 27-28).  Although Dr. Rogers diagnosed moderate anxiety and depression, these diagnoses alone do not indicate the severity of the condition.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard".).  Dr. Rogers appeared to rely on mostly Willard's self-reported symptoms.  (Tr. 261).  His objective clinical findings consisted of a mental status exam in which he found, while affect was restricted, with

---

[7] The ALJ specifically found Willard's testimony she had not obtained mental health treatment because of lack of financial resources "unreliable."  (Tr. 29, 262).

anxious and depressed mood, Willard's appearance and mannerisms were unremarkable, conversation was normal, thought process was normal, the memory test was unremarkable, and insight and judgment were fair. (Tr. 263-64). She could not interpret proverbs, perform serial 7s subtraction task, or spell "world" backward; and expressed having heard and seen things others could not. (Tr. 263-64). Dr. Rogers assessed the extent of Willard's mental impairments as "moderate" and assessed her ability to do certain basic mental work activities of understanding, remembering, carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting as "moderately impaired." (Tr. 266-67). Dr. Rogers did not specifically attribute these limitations to Willard's depression or anxiety, as opposed to the severe impairment found – mild mental retardation. (*Id.*).

Additionally, the ALJ assessed Willard's additional impairments for severity. As to Willard's GERD, the ALJ noted medical records did not indicate any acute problems, and Willard was regularly prescribed Prilosec without any complaints of side effects or ongoing problems. (Tr. 293, 298, 300, 302). Willard reported medication controlled her acid reflux and she had no symptoms. (Tr. 239). Regarding her complaints of "bad feet," the ALJ discussed medical records indicating Willard was diagnosed with misalignment and deformity of certain foot bones in

April 2009 and underwent surgery, which successfully removed bone. (Tr. 26, 246, 249-50). Two weeks post-surgery, Willard reported being able to stand "a lot." (Tr. 27, 250). At a follow-up appointment in June 2009, Willard reported significant improvement and, despite her feet hurting every now and then, she generally was doing ok. (Tr. 27, 245). On July 20, 2009, Willard had no complaints, there were no signs of infection, and she was fitted for a pair of orthotics. (Tr. 244). While Willard's feet may cause her occasional discomfort, the successful nature of the surgery and her recovery, in combination with the prescribed orthotic shoes, indicate her level of pain and associated limitations have been decreased to a degree that does not functionally affect her ability to perform basic work activities. (Tr. 27, 243-44, 250).

The ALJ evaluated the evidence of record and properly determined Willard failed to carry her burden to show she had any impairment in addition to mild mental retardation imposing any additional and significant limitations on her ability to perform basic work activities.

## VI. Conclusion

Because the Commissioner's decision is based on substantial evidence and the ALJ applied proper legal standards, it is AFFIRMED and this action will be DISMISSED WITH PREJUDICE. A separate order will be entered.

DONE this 25th day of April, 2014.

                                    HARWELL G. DAVIS, III
                              UNITED STATES MAGISTRATE JUDGE